**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARK ANTHONY WINTERS,

    Petitioner,

v.

    CASE NO. 2:12-CV-10714
    HONORABLE LAWRENCE P. ZATKOFF
    UNITED STATES DISTRICT JUDGE

STEVEN RIVARD,

    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS**

    Mark Anthony Winters, ("Petitioner"), confined at the Kinross Correctional Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for first-degree home invasion, M.C.L.A. 750.110a(2); attempted murder, M.C.L.A. 750.91; four counts of kidnapping, M.C.L.A. 750.349; two counts of felonious assault, M.C.L.A. 750.82; carrying a weapon with unlawful intent, M.C.L.A. 750.226; felon in possession of a firearm, M.C.L.A. 750.224; felony firearm, M.C.L.A. 750.227b; and being a third felony habitual offender, M.C.L.A. 769.11. For the reasons stated below, the petition for writ of habeas corpus is DENIED.

**I. Background**

    Petitioner had been in a relationship with Stephanie Jones, one of the victims. (Tr. 9/23/08, pp. 8-9). Over the course of the relationship, petitioner became violent. (*Id.,* p. 10). In May of 2007, Stephanie moved into an apartment with her daughter, Janae, and Janae's friend, Ashley Brown, in order to get away from petitioner. Stephanie asked her landlord not to tell anyone about her address.

No one but Janae and Ashley had permission to live there. (*Id.,* pp. 11-14). Petitioner discovered that Stephanie moved in with her daughter and began showing up at the apartment. Petitioner confronted Stephanie about why they had broken up. When Stephanie told petitioner that she was tired of his physical abuse, petitioner threatened to break the windows of the apartment and Stephanie's car. Petitioner remained at the apartment that night as an uninvited guest. Stephanie testified that she felt that she had no choice but to allow petitioner to spend the night. Stephanie later persuaded petitioner to leave. Stephanie did not give petitioner permission to keep his property at the apartment. (*Id.,* pp. 14-19).

On June 9, 2007, petitioner returned to the residence, but Stephanie would not let him into the apartment. Petitioner did not have a key to the apartment. When Stephanie refused to let him into the apartment, petitioner responded by breaking one of her windows. (*Id.,* pp. 17-18).

At the end of August, petitioner showed up again at Stephanie's apartment. When petitioner was refused entry, he forced his way into the residence. Stephanie ran to a friend's home. The friend called one of Stephanie's daughters, who in turned called the police. Petitioner was arrested by the police and was jailed until October 18, 2007. (Tr. 9/23/08, pp. 19-20; Tr. 9/25/08, pp. 14-15).

On October 21, 2007, Janae and Ashley were at home with a male friend named Patrick. (Tr. 9/23/08, p. 21). Stephanie was sleeping upstairs at the time. (*Id.,* p. 89). Ashley heard a knock on the door. The person identified himself as "Paul," but Ashley did not open the door because she thought it was petitioner. Petitioner broke down the door and entered the house. (*Id.,* pp. 89-90). When Ashley tried to escape out the front door, petitioner pointed a gun at her and ordered her not to leave. Petitioner walked to the kitchen and asked Janae "where the bitch at?" (*Id.,* p. 93). Stephanie heard the noises and went to investigate. Petitioner, who was standing at the bottom of

the stairs, pointed his gun, and ordered Stephanie downstairs. (*Id.,* pp. 22-23).

Petitioner ordered all four people inside the apartment into the living room. (Tr. 9/24/08, pp. 62-63). When Ashley tried to escape, petitioner pointed his gun at her and ordered her to sit down. (Tr. 9/23/08, pp. 24-25). Ashley believed that she was going to be killed. (Tr. 9/23/08, p. 94). Petitioner told everyone that he would kill Stephanie and then kill the others. (Tr. 9/24/08, p. 63). Stephanie and Janae then heard a car's horn. (Tr. 9/24/08, p. 64). Daryl Toney and his cousin Lawrence Herndon had driven from Detroit to Saginaw to visit Janae. (Tr. 9/22/08, pp. 49, 70). Petitioner became upset and Janae informed him that it was her friends in the driveway. (Tr. 9/24/08, p. 64).

Petitioner ordered everyone into the basement at gunpoint. Once inside the basement, petitioner looked out a window. While petitioner was distracted, Stephanie ran upstairs, went outside, and yelled to Toney and Herndon for help. (Tr. 9/23/08, pp. 28-30). Before Toney could respond, petitioner "came out of nowhere" with a gun in his hand. Petitioner pointed his gun at Herndon, ordered the two men out of the car, and ordered them to go to the back of the house. (Tr. 9/18/08, pp. 52-54).

Petitioner placed Stephanie in a choke hold. Stephanie began hitting him, telling petitioner to stop. Petitioner hit Stephanie in the ear with his gun, causing the gun to discharge. Stephanie fell on the ground, but petitioner ordered her to stand back up. Petitioner placed Stephanie into a headlock and forced her through the neighborhood. Several neighbors attempted to intervene, but were scared off by petitioner's gun. (Tr. 9/23/08, pp. 30-32). Stephanie asked these persons to call the police. (*Id.,* p. 71).

Petitioner forced Stephanie to an unlit location and pointed the gun to her head. Stephanie

begged for her life and convinced petitioner to stop pointing the gun at her. Petitioner, however, told Stephanie that he would kill her and them himself. At this point, the police arrived. Petitioner tackled Stephanie to the ground and warned her not to tell the police about the gun. Stephanie agreed in order to get petitioner to relinquish his weapon. (Tr. 9/23/08, pp. 34-37).

The police ordered petitioner to move away from Stephanie and arrested him. (Tr. 9/24/08, p. 22). Officer Michael East testified that Stephanie was "quite terrified." When Officer East assisted her onto her feet, she vomited. (Tr. 9/23/08, p. 38). Stephanie informed the police that petitioner had discarded his gun a few feet away, that he had pointed this gun at her about five times, and that he had threatened to kill her. (Tr. 9/24/08, pp. 26-27). Office Charles Coleman found the gun in the spot indicated by Stephanie and noted that one round had been discharged. (Tr. 9/23/08, pp. 33-35).

Petitioner was convicted following a jury trial in the Saginaw County Circuit Court. Petitioner's conviction was affirmed on appeal. *People v. Winters,* No. 288925 (Mich.Ct.App. May 18, 2010); *lv. den.* 488 Mich. 947,790 N.W. 2d 685 (Mich. 2010). Petitioner seeks habeas relief on the following grounds:

> I. Whether the introduction of prior acts evidence and hearsay testimony deprived him of a fair trial.
>
> II. Whether there was sufficient evidence to support his conviction of first degree home invasion.
>
> III. Whether the prosecutor committed error when he stated that the District Court had determined he was properly charged.
>
> IV. Whether the trial court erred in failing to give an instruction on specific intent. Also whether trial counsel was ineffective for failing to request a specific intent instruction.
>
> V. Whether defendant's offense variable were properly scored.

VI. Whether the sentencing in this case violated the rule of lenity.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the

5

doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (internal quotations omitted). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct.770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III. Discussion

#### A. Claim # 1. The evidentiary law/ineffective assistance of counsel claims.

Petitioner brings several challenges to the admission of evidence at his trial. Petitioner further claims that his trial counsel was ineffective for failing to object to the admission of this evidence.

Petitioner first contends that he was denied a fair trial because the prosecutor admitted evidence of a prior act of domestic violence, in violation of M.R.E. 404(b). Petitioner argues that this evidence was irrelevant, prejudicial, and admitted solely to establish his propensity to commit the charged offenses.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *See Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and prejudicial evidence cannot form the basis for habeas relief, because it involves a state law evidentiary issue. *See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008); *rev'd on*

*other grds* 563 F.3d 222 (6th Cir. 2009); *See also Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978).

To the extent that petitioner argues that the state court violated M.R.E. 404(b) by admitting improper character evidence against him, he would not be entitled to relief because this claim is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. U.S.*, 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003).

Petitioner further contends that the trial judge abused his discretion in permitting the prosecutor to call several rebuttal witnesses to testify to specific instances of petitioner's violent conduct, in violation of M.R.E. 405(a). The Michigan Court of Appeals rejected petitioner's claim, finding that he had opened the door to the admission of specific instances of his conduct because petitioner had testified that although he had gone to Stephanie Jones' home with a loaded gun and had forced her way into her home, he had not done so with the intent to harm her or the other victims. Petitioner had also testified that he had never physically abused Jones. On cross-

7

examination, petitioner denied committing specific acts of aggression towards her. Because petitioner's testimony on direct examination and his denial when questioned about specific acts of aggression towards the victim had placed petitioner's character for peacefulness into issue, the Michigan Court of Appeals held that the trial judge did not err in allowing the prosecutor to call character witnesses to testify as to specific acts of petitioner's conduct. *Winters,* Slip. Op. at * 3.

In the present case, petitioner opened the door to his character by testifying on direct examination that he was a peaceful person and denying on cross-examination any specific acts of aggression towards Stephanie Jones. Under M.R.E. 405(a), it was permissible under these circumstances for the prosecutor to call character witnesses and ask them about specific acts of petitioner's conduct to rebut his character for peacefulness, thus, petitioner is not entitled to habeas relief on this claim. *See e.g. Jensen v. Romanowski,* 564 F. Supp. 2d 740, 751 (E.D. Mich. 2008).

Petitioner lastly claims his right to confrontation was violated when the prosecutor called Stephanie Jones' landlord Evander Scott to rebut petitioner's testimony that he lived with Jones when the offenses were committed. Petitioner argues that Scott's testimony was based on hearsay statements made by him to Jones.

There is no Confrontation Clause problem when the witness testifies at trial and is subject to unrestricted cross-examination. *United States v. Owens,* 484 U.S. 554, 560 (1988); *See also Crawford v. Washington,* 541 36, 59, n. 9 (2004); *U.S. v. Mayberry*, 540 F. 3d 506, 516 (6th Cir. 2008). As the Supreme Court has explained, "where the declarant is not absent, but is present to testify and to submit to cross examination, our cases, if anything, support the conclusion that the admission of his out of court statements does not create a confrontation clause problem." *California v. Green,* 390 U.S. 149, 162 (1970). In this situation, "the traditional protections of the oath,

8

cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." *Owens,* 484 U.S. at 560 (internal citations omitted). When a declarant's out-of-court statement is admitted at a criminal defendant's trial, "the question is whether defendant has the *opportunity* to cross-examine the declarant at trial." *Strayhorn v. Booker,* 718 F. Supp. 2d 846, 867 (E.D. Mich. 2010) (emphasis original). Jones testified at petitioner's trial that petitioner did not live with her and did not have permission to enter her apartment. Because Jones testified at petitioner's trial and was subject to cross-examination, the admission of her out of court statement to Scott did not violate petitioner's Sixth Amendment right to confrontation. *See Shannon v. Berghuis,* 617 F. Supp. 2d 596, 604 (W.D. Mich. 2008).

Petitioner next claims that trial counsel was ineffective for failing to object to these evidentiary errors.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for

9

prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

Petitioner first contends that trial counsel was ineffective for failing to object to the

10

admission of the character evidence on the ground that its admission violated M.R.E. 404(b) and M.R.E. 405(a). This evidence, however, was admissible under Michigan law to rebut petitioner's testimony that he did not intend to harm Stephanie during the home invasion and that he had never assaulted her in the past. The failure to object to relevant and admissible evidence in not ineffective assistance of counsel. *See Alder v. Burt,* 240 F. Supp. 2d 651, 673 (E.D. Mich. 2003).

Petitioner further claims that counsel was ineffective for failing to object to Evander Scott's testimony on the ground that its admission violated his rights under the Confrontation Clause. As mentioned above, Scott's testimony did not violate the Confrontation Clause, thus, counsel was not ineffective for failing to object to its admission on this basis. *See, e.g.*, *U.S. v. Johnson,* 581 F. 3d 320, 328 (6th Cir. 2009). Petitioner is not entitled to habeas relief on his first claim.

### B. Claim # 2. The sufficiency of evidence claim.

Petitioner next contends that there was insufficient evidence to convict him of first-degree home invasion, because he had stayed at the victim's apartment.

The Michigan Court of Appeals rejected petitioner's claim:

At trial, defendant testified that when he forced his way into the complainant's home, he did so knowing that the complainant did not want him in the house. The testimony reflects that defendant did not have a key to the complainant's home, his name was not on the lease, and his personal papers did not list the complainant's address as his home address. Based on this record, a rational juror could find defendant guilty of first-degree home invasion. That the jury was presented with conflicting testimony does not change our finding. It is well-settled that it is the jury, not the courts, that determines the weight and credibility of the evidence presented. See e.g., *People v. Stiller*, 242 Mich.App. 38, 42, 617 N.W.2d 697 (2000). Because the record allows for a finding that defendant did not have a legal right to possession in the complainant's home, we find that defendant's reliance upon our holdings in *People v. Pohl*, 202 Mich.App. 203, 507 N.W.2d 819 (1993), and *People v. Szpara*, 196 Mich.App. 270, 492 N.W.2d 804 (1992) is misplaced.

*Winters,* Slip. Op. at * 4.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted) (emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* In fact, the *Jackson* standard "is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis v. Lafler*, 658 F. 3d 525, 534 (6th Cir. 2011) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009) (internal quotation marks omitted)). Therefore, for a federal habeas court reviewing the sufficiency of evidence for a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as

12

to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

M.C.L.A. 750.110a(2) states that:

A person who breaks and enters a dwelling with intent to commit a felony or a larceny in the dwelling or a person who enters a dwelling without permission with intent to commit a felony or a larceny in the dwelling is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

(a) The person is armed with a dangerous weapon.
(b) Another person is lawfully present in the dwelling.

Michigan's first-degree home invasion statute includes all of the elements of the burglary of a dwelling, but also requires that the defendant be armed with a dangerous weapon and/or that the dwelling be occupied. *See Johnson v. Warren,* 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004)(citing *United States v. Garcia-Serrano,* 107 Fed. Appx. 495, 496-97 (6th Cir. 2004)). The term "without permission" is defined by Michigan law as "without having obtained permission to enter from the owner or lessee of the dwelling or from any other person lawfully in possession or control of the dwelling." M.C.L.A. 750.110a(1)(c).

The evidence at trial was sufficient to permit a rational trier of fact to conclude that petitioner did not have permission to enter Stephanie Jones' apartment, so as to support his conviction for first-degree home invasion. The evidence established that petitioner did not have

a key to Jones' apartment, his name was not on the lease, and his personal papers did not list her address as his address. Stephanie Jones testified that although petitioner had stayed at her house twice in the past, it was done without her permission. Jones did not give petitioner permission to keep his property at her residence, nor did she give him a key. (Tr. 9/23/08, pp. 14-19). Moreover, the fact that petitioner kicked down the door during the incident establishes that he did not have permission to enter the home. (*Id.,* pp. 41-42, 90). Petitioner is not entitled to habeas relief on his second claim.

### C. Claim # 3. The prosecutorial misconduct claim.

Petitioner next claims that the prosecutor committed misconduct by arguing to the jury that petitioner had been properly charged because he had been bound over by the district court judge following a preliminary examination. Respondent contends that this claim is procedurally defaulted because petitioner failed to preserve the claim by objecting at trial and the Michigan Court of Appeals thus reviewed the claim for plain error only. *Winters,* Slip. Op. at * 4.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477

U.S. 478, 479-80 (1986).

Michigan law requires that a criminal defendant object to prosecutorial misconduct in order to preserve such a claim for appellate review. *See Mack v. Jones,* 540 F. Supp. 2d 840, 847 (E.D. Mich. 2008) (citing *People v. Buckey*, 424 Mich. 1, 378 N.W.2d 432, 440 (1985); *People v. Sharbnow*, 174 Mich. App. 94, 435 N.W. 2d 772, 775 (1989)). The Michigan Court of Appeals' reliance on petitioner's failure to object to the prosecutor's conduct is an adequate and independent state ground for foreclosing review. *See Engle v. Isaac*, 456 U.S. 107, 110 (1982). The fact that the Michigan Court of Appeals engaged in plain error review of the prosecutorial misconduct claim does not constitute a waiver of the state procedural default. *See Seymour v. Walker*, 224 F. 3d at 557. Instead, this Court should view the Michigan Court of Appeals' review of petitioner's claim for plain error as enforcement of the procedural default. *See Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001). Petitioner's prosecutorial misconduct claim is procedurally defaulted.

Petitioner has offered this Court no reasons for his failure to preserve his prosecutorial misconduct claim. Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue regarding his procedurally defaulted claim. *Smith*, 477 U.S. at 533. Additionally, petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Id.,* at 324. Because petitioner has not presented any new reliable

15

evidence that he is innocent of this crime, a miscarriage of justice will not occur if the Court declined to review petitioner's procedurally defaulted claim on the merits. *See Mack,* 540 F. Supp. 2d at 847. Petitioner is not entitled to relief on his third claim.

### D. Claim # 4. The jury instruction claim.

In his fourth claim, petitioner argues that he was denied a fair trial because the trial court failed to give Michigan Criminal Jury Instruction 3.9 on specific intent when the jury asked for a definition of the word intent. The judge, instead, instructed the jurors that the word intent had "no particular special meaning in the law" and that they were "aware of the normal parlance of the English language, apply it in that manner to the instructions." (Tr. 9/26/08, p. 23). Petitioner further claims that trial counsel was ineffective for failing to request that this instruction be given.

The Michigan Court of Appeals rejected petitioner's claim, finding that the judge's instructions as a whole fairly presented the issue of specific intent to the jury. *Winters,* Slip. Op. at * 3.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977). The challenged instruction must not judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United* States, 527 U.S. 373, 391 (1999). Further, any ambiguity, inconsistency

16

or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191.

Moreover, in determining whether to grant habeas relief to a habeas petitioner based upon an erroneous jury instruction, the reviewing court must determine whether that instruction had a substantial and injurious effect or influence on the jury's verdict. *See Hedgpeth v. Pulido,* 555 U.S. 57, 61-62 (2008); *California v. Ray,* 519 U.S. 2, 5 (1996).

In the present case, the judge originally instructed the jurors on the specific intent required for the various offenses. (Tr. 9/26/08, pp. 13-14, 17-18). A supplemental instruction is to be interpreted in light of the instructions that have previously been given. *See U.S. v. Salter,* 346 F. 2d 509, 512 (6th Cir. 1965). The judge's supplemental instruction concerning the definition of intent must be interpreted in light of the original instructions on specific intent. Moreover, there was no need for the judge to define the common word intent to the jurors. The Sixth Circuit has held that "[a] trial court 'need not define familiar English words when the jury can appreciate their meaning without special knowledge.'" *U.S. v. Lentsch,* 369 F. 3d 948, 954 (6th Cir. 2004)*(quoting U.S. v. Mack*, 159 F. 3d 208, 218 (6th Cir. 1998)). Because the instructions in their entirety adequately explained the issue of specific intent, petitioner is not entitled to habeas relief on his instuctional error claim. *See Campbell v. Coyle,* 260 F. 3d 531, 557 (6th Cir. 2001). Since the instructions as a whole adequately explained the issue of specific intent to the jurors, counsel was not ineffective for failing to request a supplemental instruction on specific intent. *Id.* Petitioner is not entitled to habeas relief on his fourth claim.

**E. Claims # 5 and # 6. The sentencing guidelines claims.**

In his fifth and sixth claims, petitioner claims that his sentencing guidelines were incorrectly scored and that the calculating of his sentencing guidelines violated Michigan's separation of powers doctrine and the rule of lenity.

State courts are the final arbiters of state law. *See Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *Sanford v. Yukins,* 288 F.3d 855, 860 (6th Cir. 2002). Therefore, claims which arise out of a state trial court's sentencing decision are not normally cognizable on federal habeas review, unless the habeas petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *See Vliet v. Renico,* 193 F. Supp. 2d 1010, 1014 (E.D. Mich. 2002). Thus, a sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. *See Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003). Petitioner had "no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009). "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating his guideline score would not merit habeas relief. *Id.*

Petitioner's related allegation that the scoring of his sentencing guidelines violated the separation of powers between branches of state government is not cognizable on habeas review

18

because it raises an issue of state law. *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000).

Finally, this Court must reject petitioner's claim that the trial judge violated the "rule of lenity" when he scored petitioner under the sentencing guidelines for attempted murder rather than for kidnapping. This Court, sitting in federal habeas review, has no power to reexamine Michigan's application of its "rule of lenity." *See Jones v. Harry*, 405 Fed. Appx. 23, 29 (6th Cir. 2010). Petitioner is not entitled to habeas relief on his fifth and sixth claims.

### IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id*. at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id*. at 484. When a plain procedural bar is present and the district court is correct to invoke

it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id*. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because jurists of reason would not find this Court's resolution of his claims to be debatable. *See Strayhorn v. Booker*, 718 F. Supp. 2d at 854. The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Myers v. Straub*, 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001).

## V.  ORDER

Accordingly, the Petition for Writ of Habeas Corpus is DENIED.

The Court further DENIES a certificate of appealability.

The Court further DENIES petitioner leave to appeal *in forma pauperis*.

<br>

S/Lawrence P. Zatkoff
HON. LAWRENCE P. ZATKOFF
Dated: March 24, 2014                    UNITED STATES DISTRICT JUDGE